IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02648-PAB-KLM

GUILLERMO H. GUTIERREZ,

    Plaintiff,

v.

THE GEO GROUP, INC.,

    Defendant.

---

**ORDER**

---

This matter is before the Court on defendant's motion to dismiss [Docket No. 16] plaintiff's amended complaint [Docket No. 14]. The motion is fully briefed and ripe for disposition.

**I. BACKGROUND**[1]

Plaintiff Guillermo H. Gutierrez began working for defendant The GEO Group, Inc. ("GEO") in 2001.[2] Plaintiff has not alleged what position or positions he held while working at GEO. Plaintiff, who is Hispanic, alleges that he and other minority employees of GEO were treated more harshly than Caucasian employees of GEO for the same or similar violations of company policies.

As an example, plaintiff asserts that he was placed on leave without pay in June 2009 for taking time off, but that Caucasian officers who took time off were not similarly

---

[1] Unless otherwise indicated, the following facts are drawn from the complaint [Docket No. 14].

[2] At the time, GEO was known as Wackenhut.

disciplined.³  Plaintiff complained about this disparity of discipline to his supervisors, including Captain Harrison.⁴  Captain Harrison "reacted in a verbally and physically aggressive manner toward Plaintiff," including "slamm[ing] a letter of resignation down in front of Plaintiff, demanding that Plaintiff resign."  Docket No. 14 at 2, ¶ 9.

In October 2009, plaintiff and Captain Harrison discussed the performance of a particular Caucasian subordinate to plaintiff.  Captain Harrison initially expressed agreement with plaintiff's comments.  When plaintiff then raised the issue of disparate treatment of officers based upon race, Captain Harrison threatened plaintiff by saying they could "take it outside."  Docket No. 14 at 2-3, ¶ 10.

Plaintiff communicated his concerns regarding disparate treatment and Captain Harrison's conduct to other supervisors.  Plaintiff was thereafter required to receive counseling for allegedly making racial statements regarding Caucasian officers.  Furthermore, plaintiff's supervisors, including Captain Harrison, subjected plaintiff to increased oversight, compiled negative reports about him, and denied him opportunities to advance.  Plaintiff's supervisors and co-workers also "responded with insults, comments, and aggressive or threatening actions."  Docket No. 14 at 3-4, ¶ 14.  Captain Harrison was not disciplined.

---

³The complaint actually alleges that "Caucasian officers in [the] same or similar position . . . were not disciplined under the same or similar circumstances."  Docket No. 14 at 2, ¶ 7.  Although this allegation is not entirely clear, the Court interprets the complaint as alleging that officers were, under the same or similar circumstances, not disciplined in the same fashion as plaintiff.

⁴Plaintiff does not identify Captain Harrison's first name.  Plaintiff indicates that Captain Harrison is now a Major, but does not allege the nature of GEO's business.  GEO, however, represents that it operates a "private detention facility in Aurora, Colorado, known as Aurora I.C.E. Processing Center."  Docket No. 16 at 1.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") dated May 25, 2010. See Docket No. 16-1 at 1-2. On May 3, 2011, the EEOC issued plaintiff a Notice of Right to Sue. In his amended complaint [Docket No. 14], plaintiff alleges that defendant discriminated against him on account of his race and retaliated against him for protected activity in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq.

## II. STANDARD OF REVIEW

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted." Dubbs v. Head Start, Inc., 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted). At the same time, however, a court need not accept conclusory allegations. Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (omission marks, internal quotation marks, and citation omitted). The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. Bryson v. Gonzales,

534 F.3d 1282, 1286 (10th Cir. 2008).

However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).

## III. DISCUSSION

GEO argues that plaintiff fails to allege sufficient facts to support his Title VII claims of discrimination and retaliation.[5] Title VII provides in pertinent part that it is an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

---

[5]GEO also argues that the Court is not empowered to resolve the merits of this case because dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(1). In support of that argument, GEO contends that plaintiff "failed to timely file an EEOC charge regarding his claim and exhaustion of administration remedies is a jurisdictional prerequisite to suit under Title VII." Docket No. 16 at 4. Although it is the general rule in the Tenth Circuit that a plaintiff must exhaust his administrative remedies under Title VII for a court to have jurisdiction, not every defect in the administrative process defeats jurisdiction. Because GEO's exhaustion argument turns on the timeliness of plaintiff's charge of discrimination, it does not implicate the Court's jurisdiction. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"); *Peterson v. City of Wichita, Kan.*, 888 F.2d 1307, 1309 (10th Cir. 1989) ("although satisfying section 2000e–5(b) is a jurisdictional prerequisite to enforcing an EEOC summons, filing a timely EEOC charge is indisputably not a jurisdictional prerequisite to suit under *Zipes*").

4

employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

"Under *McDonnell Douglas*, a three-step analysis requires the plaintiff first prove a prima facie case of discrimination." *Id.* To make out a prima facie case of discrimination, plaintiff must identify "evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *Equal Employment Opportunity Commission v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005)).[6] One way to demonstrate "circumstances giving rise to an inference of discrimination" is to show that "the employer treated similarly situated employees more favorably." *Sorbo*, 432 F.3d at 1173.[7]

---

[6] *See PVNF*, 487 F.3d at 800 n.5 ("There exists some tension in our case law regarding what a plaintiff must establish as part of his or her prima facie case of discrimination. Some cases treat circumstances suggestive of discrimination as an element of a prima facie case; other cases treat the surrounding circumstances as part of the analytically subsequent inquiry into the employer's stated reason for the challenged action and the plaintiff's opposing demonstration of pretext. *Sorbo*, 432 F.3d at 1173 & n.5 (listing cases). Regardless of whether we analyze the plaintiff's evidence 'in reference to the prima facie case or the business justification versus pretext inquiry, . . . if the court correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result.' *Id.* at 1173.").

[7] "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim. Thus, we start by discussing the elements a plaintiff must prove to establish a claim for discrimination and retaliation

As noted above, plaintiff alleges that he was placed on leave without pay in June 2009 for taking time off but that Caucasian officers who took time off were not similarly disciplined. Plaintiff also alleges that he "was denied promotional opportunities based on his race, ethnicity, and/or perceived national origin." Docket No. 14 at 3, ¶ 13. Plaintiff, however, alleges no facts in support of these conclusory assertions. The Court finds that plaintiff's "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," and, therefore, "the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks and alteration marks omitted). "While specific facts are not necessary, some facts are." *Khalik*, 671 F.3d at 1193 (quotation marks, alteration, and citation omitted). Because plaintiff recites that he was treated less favorably than similarly situated Caucasian employees and was not promoted because of his race, but offers not a single fact supporting these conclusory statements, the Court will dismiss plaintiff's Title VII claim for discrimination. *See Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."); *cf. Khalik*, 671 F.3d at 1194 ("While we do not mandate the pleading of any specific facts in particular, there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement.").

Turning to plaintiff's retaliation claim, Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an

---

under Title VII and the FMLA." *Khalik*, 671 F.3d at 1192 (citations omitted).

unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). "In order to establish a prima facie case of retaliation, Plaintiff[] must show that '(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *Somoza v. University of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

GEO argues that plaintiff has not alleged facts sufficient to show that he suffered a materially adverse employment action. "An adverse employment action includes acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (quotation marks, alteration, and citations omitted). These acts do not constitute an exhaustive list of potential materially adverse employment actions. *See Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004). The Court must "liberally interpret the second prong of the prima facie case and take a case-by case approach." *Dick*, 397 F.3d at 1268. The Court should ask whether the alleged conduct was "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006). However, the Court "will not consider 'a mere inconvenience or an alteration of job responsibilities' to be an adverse employment action." *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (citation omitted).

Plaintiff alleges that, when he complained to Captain Harrison about disparate treatment relating to his June 2009 leave without pay, Captain Harrison "slammed a letter of resignation down in front of Plaintiff, demanding that Plaintiff resign." Docket No. 14 at 2, ¶ 9.[8] Plaintiff apparently did not sign the letter and was not terminated, and there are no allegations that support the inference that this single instance was, or resulted in, a materially adverse employment action. *See Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) ("[W]e have never expressly held that an unrealized threat of termination, without more, constitutes an adverse employment action."); *cf. Martin v. Sears, Roebuck and Co.*, No. 08-cv-01998-MSK-KMT, 2009 WL 4730466, at *9 (D. Colo. Dec. 7, 2009) ("A number of 10th Circuit decisions have found that although disciplinary notices can constitute adverse employment actions, a single notice that chastises an employee for some particular action and threatens increased discipline in the future, without more, does not rise to the level of an adverse action sufficient to support a retaliation claim.").

Plaintiff also alleges that, after he raised the issue of racial discrimination in October 2009, Captain Harrison threatened him with physical harm by challenging plaintiff to "take it outside." Docket No. 14 at 2-3, ¶ 10. While such a statement is unprofessional and inappropriate, plaintiff does not allege facts indicating what, if anything, ever came of Captain Harrison's outburst that would constitute a materially adverse employment action. *See Samuels v. Potter*, 372 F. App'x 906, 908 (10th Cir.

---

[8]Plaintiff also alleges that this instance was one "[a]mong other specific acts" taken by Captain Harrison. Docket No. 14 at 2, ¶ 9. Plaintiff, however, does not allege any other acts taken by Captain Harrison in response to his complaints about disparate treatment in the summer of 2009.

2010) ("We certainly do not discount the impropriety of any unwanted physical contact in the workplace, but propriety per se is not the inquiry here. Rather, we must ask whether the contact alleged might well have dissuaded a reasonable worker from complaining about discrimination. On that score, we agree with the district court that a triable issue was not made out on our record.") (footnotes omitted).[9]

Plaintiff alleges that he informed other supervisors about his concerns regarding disparate treatment as well as about Captain Harrison's response to his complaints. *See Samuels*, 372 F. App'x at 908-09 ("The other point, emphasized by the district court, is that Mr. Samuels kept up his workplace complaints following the alleged altercation. While this alone is not, of course, dispositive of the objective material-adversity inquiry, it does 'shed light as to whether the [employer's] actions are sufficiently material and adverse to be actionable.'") (citation omitted). Plaintiff alleges that, "[a]fterward," he was "ordered to undergo counseling for allegedly making a racial statement about all the Caucasian officers on the East Core of the GEO facility." Docket No. 14 at 3, ¶ 11. Plaintiff, however, does not allege that the unidentified person or people who ordered him to undergo counseling did not do so because of alleged racial comments made by him.

Plaintiff does allege that he was thereafter subject to "increased scrutiny and

---

[9]*Samuels*, 372 F. App'x at 908 ("[T]his court has acknowledged on numerous occasions that the anti-discrimination laws do not license courts to police the workplace for each and every deviation from social standards of proper interpersonal conduct. In the context of alleged retaliation, we have repeatedly held that, unless pervasive, incidents of rudeness, ridicule, unruly behavior, and angry outbursts allegedly prompted by past complaints are not sufficient to satisfy the material-adversity standard. . . . The push to the back of his shoulder may have taken the incident a step further, but not enough to cross the line and raise a triable issue of material adversity.").

criticism on a day-to-day basis" and that Captain Harrison and other supervisors "compil[ed] negative reports on Plaintiff that impacted Plaintiff's standing in the company's progressive disciplinary and promotional system." Docket No. 14 at 3, ¶ 12. Plaintiff alleges that he "was denied promotional opportunities based on . . . the animus of the supervisors arising from Plaintiff's complaints about discrimination." Docket No. 14 at 3, ¶ 13. Plaintiff also believes supervisors spoke about plaintiff in a "derogatory manner" and discussed "ways to get rid of Plaintiff." Docket No. 14 at 3, ¶ 12. Plaintiff further alleges that, "[w]hen the issue of race, ethnicity, and/or perceived national origin-related preferential treatment was raised by Plaintiff, supervisors and coworkers responded with insults, comments, and aggressive or threatening actions." Docket No. 14 at 3-4, ¶ 14.

These allegations merely identify categories of mistreatment by largely unidentified individuals. Moreover, plaintiff fails to allege any facts that support the inference that he suffered such mistreatment. For example, he asserts generally that he was subjected to additional scrutiny, criticism, negative reports, or derogatory conversations, but the complaint lacks factual allegations indicating when such incidents occurred, who subjected him to such conduct, and what conduct specifically occurred. Moreover, plaintiff fails to allege a single instance of being denied a promotion. And, while plaintiff alleges that he was subjected to "insults, comments, and aggressive or threatening actions," the complaint contains no facts regarding conduct that would constitute materially adverse employment actions. *See* Docket No. 14 at 3-4, ¶ 14 (providing the following single example: "Among other things, Plaintiff was called 'Poncho.'"); *see also Dick*, 397 F.3d at 1269 ("Coworker hostility or retaliatory

10

harassment may be an 'adverse employment action' if it is sufficiently severe.").[10]  Such "unadorned, the-defendant-unlawfully-harmed -me accusation[s]" are insufficient to state a viable claim for relief.  *Iqbal*, 556 U.S. at 678.[11]

Because plaintiff fails to allege facts sufficient to support the inference that he suffered a materially adverse employment action, the Court need not reach GEO's argument that plaintiff offers nothing more than bare conclusions in support of the causal connection between the protected activity and any alleged adverse actions.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's motion to dismiss [Docket No. 16] and unopposed motion for leave to submit supplemental authority in support of its motion for dismissal [Docket No. 24] are GRANTED.  This case shall be dismissed in its entirety.

---

[10]Although plaintiff does not appear to be asserting a hostile work environment claim, the Court notes that the complaint also fails to allege facts indicating that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment."  *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (internal citations and quotations omitted).

[11]*Cf. Khalik v. United Air Lines*, No. 10-cv-01490-DME-MJW, 2010 WL 5068139, at *3 (D. Colo. Dec. 7, 2010) ("Plaintiff's allegation that '[s]he was physically assaulted in the office . . . after being subjected to a false investigation and false criticism of her work,' and that she was 'targeted' for this treatment because of her race, religion, and national origin, is conclusory and speculative.  Plaintiff does not state when these alleged wrongful actions occurred, what the circumstances were, or the identity of the perpetrator(s), which might be important in determining whether United could even be held responsible for these wrongdoings.  Plaintiff also does not intimate why she believes that her race, religion, or national origin motivated the actions.") (citation omitted), *aff'd by* 671 F.3d 1188 (10th Cir. 2012).

DATED June 6, 2012.

                                BY THE COURT:

                                s/Philip A. Brimmer
                                PHILIP A. BRIMMER
                                United States District Judge